# Mikesell, Appellant, *v.* Wehrle.

*Deed—Option—Variance in description—Coal—Reformation of instrument—Equity.*

An owner of coal land gave an option reserving to himself "twenty-five to thirty acres of coal in the tops of the hills." The person receiving the option exercised it, and had his attorneys prepare a deed in which the reservation was described as the "seam or bed of coal which may be in, upon, or under the above-described premises known as the Pittsburg Seam." It appeared that there was no coal known as the Pittsburg seam on the premises. The variance in the description in the deed from that in the option was the result either of a deception practiced on the grantor, or was a mutual mistake as to the name of the vein reserved. The evidence was uncontradicted that the coal reserved was an actual vein known to the grantee, and there was evidence that at the time the deed was executed and delivered representations were made to the owner by the grantee that the description in the deed covered the same body of coal referred to in the option. *Held,* that the grantor was entitled to have the deed reformed so as to read into it the description contained in the option.

Argued May 4, 1908. Appeal, No. 204, April T., 1908, by plaintiff, from decree of C. P. Indiana Co., June T., 1906, No. 1, dismissing bill in equity in case of Daniel Mikesell v. R. W. Wehrle and Wm. M. Moore. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Bill in equity to reform a deed. Before TELFORD, P. J.

The trial judge filed the following opinion:

### FINDINGS OF THE JUDGE.

1. That the plaintiff is the owner of a tract of land in Burrell township, containing 104 acres, more or less, and on June 17, 1902, made an optional agreement for the sale of the coal thereunder, with mining rights and privileges, to William M. Moore, "excepting and reserving twenty-five to thirty acres of coal in the tops of the hills."

2. That R. W. Wehrle, under agreement, acquired the interest of William M. Moore in said optional agreement.

3. That William M. Moore accepted said optional agreement.

4. That in 1904 plaintiff opened "the coal in the tops of the hills" claimed by him under the reservation and has since worked this vein.

5. That this vein is about twenty-five to thirty acres in extent, is close by the house, is the only vein on the premises answering the description in the optional agreement, and is the vein contemplated by the parties to that agreement.

6. That the vein alleged by R. W. Wehrle to have been lately opened on the plaintiff's lands, is limited in extent not exceeding two acres, was not known to the plaintiff and was not in contemplation of the parties to the optional agreement.

7. That in March, 1903, R. W. Wehrle had knowledge of the existence of the optional agreement and made an offer through J. D. McCracken to Mikesell "for the coal he had reserved and the surface;" Wehrle also was told by Mikesell that he would reserve the top seam and that Moore had an option. ✓

8. That prior to January 16, 1905, the defendants caused a deed to be prepared for the plaintiff to execute to Moore and another for Moore to execute to Wehrle; that these deeds are substantially alike and instead of the reservation contained in the optional agreement, contained a reservation of the "seam or bed of coal which may be in, upon or under the above described premises known as the 'Pittsburg Seam.'"

9. That on January 16, 1906, R. W. Wehrle, who resides in Indiana, Pa., and William M. Moore, who resides in Greensburg, Pa., by arrangement, met in Blairsville with A. E. Fretts and D. S. Potts of Greensburg; that the purpose of this meeting was to secure the execution of a deed by Mikesell to Moore for the coal underlying the tract owned by Mikesell; and a deed from Moore to Wehrle; that Wehrle employed Jacob Geib, a justice of the peace of Blairsville, to go with Moore, Fretts and Potts to the home of Mikesell and take an acknowledgment of said deed, Wehrle paying the justice for his services and hiring and paying for the conveyance in which they went; that Wehrle

gave to the justice the sum of $800 to pay to Mikesell the cash payment; that Moore, Fretts, Potts and the justice went to Mikesell's, tendered the deed and demanded its execution; that Mikesell refused to execute the deed until he was assured by Moore that the deed was right and like the optional agreement and thereupon he signed it, the justice taking the acknowledgment and paying to Mikesell the sum of $713.33; Moore, Fretts, Potts and the justice then returned to Blairsville and the justice repaid to Wehrle the residue of the $800, and Moore delivered to Wehrle the Mikesell deed and also the deed for the same coal which Moore had acknowledged the same day before coming to Blairsville.

10. That in January, 1906, Wehrle went to the home of Mikesell and notified him not to dig the vein which Mikesell had opened in 1904; that then and there Wehrle claimed that Mikesell had reserved the "Pittsburg Vein and it had run out before it came there," and upon Mikesell claiming that he had reserved and still owned the top seam of coal Wehrle said he had sent him a good justice of the peace.

11. That in the securing of the deed from Mikesell to Moore Jacob G. Geib, justice of the peace, was the agent of Wehrle and participated in the transaction by the payment to Mikesell of the cash consideration.

12. That there is no vein of coal in the neighborhood of the Mikesell farm known as the Pittsburg Vein, and the vein reserved by Mikesell is above the house, close by.

### DISCUSSION.

There is evidence in this case sufficient to justify the conclusion that in the execution of the deed from Mikesell to Moore, Mikesell was deceived and was led to believe that the coal reserved in his option was also reserved to him in his deed. If this proceeding affects the rights of Moore, one of the defendants, only, an order would be made that the deed be reformed according to the first prayer of the bill. The rights of William M. Moore, however, had passed to R. W. Wehrle, and unless he participated in or was cognizant of the fraud, he could not be affected by it. There is no direct evidence that he had such

knowledge. Circumstances are shown from which it might be inferred. He offered to purchase from Mikesell the surface and the coal reserved at a price named by him at a time when no other coal above the vein outcropping near Mikesell's house was known by him to exist.

He participated in closing the contract by the execution of a deed from Mikesell to Moore through Jacob G. Geib, a justice of the peace, who represented him in the transaction in so far as the payment of the money was concerned, but no act of his or his agents, so far as we can discover from the testimony, induced the conveyance nor can we certainly conclude that the defendant, Wehrle, knew that the clause in the deed differed from that contained in the option, when he accepted the conveyance and paid or secured the payment of the purchase money to William M. Moore. The evidence to reform a contract must be clear, precise and indubitable and must establish the fact relied upon beyond a reasonable doubt: Breneiser v. Davis, 141 Pa. 85; Reed v. Horn, 143 Pa. 323; Boyertown Nat. Bank v. Hartman, 147 Pa. 558.

### CONCLUSIONS OF LAW.

In the absence of satisfactory evidence that R. W. Wehrle, at the time he took title from William M. Moore, knew of the departure from the reserve clause in the agreement, or had conspired with William M. Moore to procure a deed in the form which it now appears by inducing the execution of such a deed by Mikesell, it would be unreasonable that he should now be prejudiced by such a change in its terms. The bill ought therefore to be dismissed at the cost of the plaintiff.

And now, August 9, 1907, the bill is dismissed at the cost of the plaintiff.

*D. B. Taylor*, for appellant, cited: Cook v. Liston, 192 Pa. 19; Boyertown Nat. Bank v. Hartman, 147 Pa. 558; Stauffer v. Young, 39 Pa. 455.

*J. N. Banks*, with him *Cunningham & Fisher*, for appellees, cited: Stine v. Sherk, 1 W. & S. 195; Boyertown Nat. Bank v.

Hartman, 147 Pa. 558; Dorris v. Morrisdale Coal Co., 215 Pa. 638; Young v. Oil Co., 194 Pa. 243.

OPINION BY HENDERSON, J., October 12, 1908:

The learned trial judge found that the evidence in this case was sufficient to justify the conclusion that in the execution of the deed from the plaintiff to Moore the grantor was deceived and was led to believe that the coal reserved in his option was also reserved in his deed. The soundness of this conclusion becomes apparent on an examination of the evidence. It is clearly shown that the plaintiff intended to and, in his option, did reserve " 25 to 30 acres of coal in the tops of the hills " and that this was well understood by Moore; that the deed to the latter and by him to Wehrle were prepared by their attorneys under instructions from the defendants in which deeds the reservation was described as the "seam or bed of coal which may be in, upon or under the above described premises known as the Pittsburgh seam" and that at the time the plaintiff's deed was executed and delivered it was represented to him that the description in the deed covered the same body of coal referred·to in the optional agreement and secured to the plaintiff the same title which he reserved under that agreement. It was proved and is admitted by Wehrle that there is no Pittsburg seam of coal on the plaintiff's farm and the reservation in the deed by its terms did not secure any coal to the plaintiff. To hold that Moore could assert a title to all the coal on the plaintiff's farm would be to countenance a gross injustice and even if the parties were merely mistaken in supposing that the vein of coal which was intended to be excepted from the grant was the "Pittsburgh vein" the plaintiff would be entitled to relief as against Moore. A mutual mistake in naming the excepted body of coal would not prevent the plaintiff from asserting his title to that which was in contemplation by the parties and intended to be covered by the exception. But we think the court should have gone further and held that the defendant, Wehrle, was alike chargeable with the consequences of the change of the terms of the exception in the deed from those used in the optional agreement. Wehrle knew that the

plaintiff had reserved twenty or thirty acres of coal in the up-
per vein and made him an offer therefor.  His contract with
Moore was for the payment of $5.00 an acre more than the
latter had agreed to pay to the plaintiff.  The deeds from Mike-
sell to Moore and from Moore to Wehrle were prepared under
the direction of Wehrle by his attorneys who were also the at-
torneys of Moore.  The money paid to Mikesell at the time his
deed was delivered was paid directly by Wehrle through Mr.
Geib, a justice of the peace.  No money was paid at the time
to Moore.  Geib was employed by Wehrle to go to Mikesell's
house with Moore to take Mikesell's acknowledgment of his
deed and to pay him the purchase money then due.  He was
acting wholly in the interest of Wehrle in the transaction.  It
was understood by the parties present at the time when Mike-
sell's deed was acknowledged and delivered that the coal ex-
cepted and reserved therein was the same which was described
in the optional agreement and Geib paid Wehrle's money
to Mikesell for the deed to Moore on that understanding.
Moore was merely a conduit through which the title passed
from Mikesell to Wehrle.  He had contracted with Wehrle to
sell the coal secured under the option before the Mikesell deed
was executed, and the transaction as closed by Geib, Wehrle
and Moore was in fact in the interest of Wehrle who was repre-
sented by Geib.  The deeds of Mikesell to Moore and from Moore
to Wehrle were delivered to the latter at the same time and
the same day they were executed.  There was some contradic-
tion of testimony as to whether the reservation in the deed was
read to Mikesell before he executed the conveyance, but there
is no dispute about the fact that the coal reserved was the vein
of coal above the house known both by Moore and Mikesell
which was said to be the Pittsburg vein.  It is now contended
by Wehrle that all the plaintiff secured by his reservation was
the Pittsburg vein and that there is no Pittsburg vein on the
farm and the plaintiff has been notified not to mine coal on the
vein to which he alleges the reservation applies.  The evidence
makes it very clear in our view of the case that Wehrle is
chargeable with the consequences of the change in the descrip-
tion of the exception and reservation in the deeds and that

whether this change was the result of a deception practiced or a mutual mistake as to the name of the vein reserved, the plaintiff is entitled to have the reservation carried into the deed in the form in which it existed in the contract of option. The status of the parties will thereby be set forth in the deed as intended and expressed in the contract and on this foundation their rights may be asserted and defended.

The decree is reversed and it is now ordered and decreed that the bill be reinstated, that the deed from Daniel Mikesell to William M. Moore dated January 16, 1905, and the deed of the same date from William M. Moore and Mary A. Moore, his wife, to R. W. Wehrle be reformed by inserting in each of the said deeds instead of the words "excepting and reserving to the parties of the first part, their heirs and assigns forever, any and all of that certain seam or bed of coal which may be in, upon or under the above described premises known as the 'Pittsburgh Seam'" where the same appears in the said deeds the words following: "excepting and reserving 25 to 30 acres of coal in the tops of the hills and containing 104, one hundred and four acres, more or less" and that the record of the said respective deeds in the office of the recorder of deeds of the county of Indiana be amended in conformity with this decree. It is further ordered that the costs of this appeal be paid by the appellees.